FILED 3 SEP '19 10:34USDC-ORP

1    Edward Hernandez
2037 W. Bullard Ave; Ste. 240
2    Fresno, California 93711

3

4    Plaintiff (*Pro Se*)

5

6                  **UNITED STATES DISTRICT COURT**

7                       **DISTRICT OF OREGON**

8                       **PORTLAND DIVISION**

9    EDWARD HERNANDEZ          Case No. 3:19-CV-01404-JR

10            Plaintiff,          **COMPLAINT FOR DAMAGES,**
        v.                  **AND PUNITIVE DAMAGES**
11

12    JEFFERSON COUNTY SHERIFF'S    **JURY TRIAL DEMANDED**
   OFFICE; RON LARSON, JIM ADKINS,
13    and STEVE KEEVER, as agents and    Judge:
   individuals; JEFFERSON COUNTY
14    PUBLIC WORKS DEPT; CITY OF    Date Action filed:
   METOLIUS, an Oregon limited liability    Date set for trial:
15    corporation; MADRAS CITY POLICE
   DEPT; JOHN DOE I, as an agent and
16    individual; OREGON STATE POLICE
17    DEPT.; JOHN DOE II, as an agent and
   individual; BAGGETT, INC, an Oregon
18    corporation; LEE BAGGETT and JUAN
   JOSE-CRUZ RODRIGUEZ, as agents and
19    as individuals; BARRY DAVIDSON, an
20    individual; and ROBERT MARRAZZO, as
   an individual.
21

22            Defendants.

23                     **I. NATURE OF THE CASE**

24        1. Plaintiff, Edward Hernandez, brings this action against Defendants, Jefferson County

25    Sheriff's Office (JCSO), Jefferson County Public Works (JCPW), City of Metolius (COM),

26    Madras City Police Department (MPD), Oregon State Police (OSP), Baggett Inc (BI), Ron

27    Larson, Jim Adkins, Steve Keever, John Doe I, John Doe II, Lee Baggett, Juan Jose-Cruz
28

Rodriguez, Barry Davidson and Robert Marrazzo (hereinafter referred to collectively as "Defendants," or individually by their respective acronym or surname). This complaint seeks damages and punitive damages for the actions or inactions of the Defendants as described herein which deprived the Plaintiff of substantive rights afforded under the Civil Rights Act and the U.S. Constitution. The Plaintiff further asserts that the request for punitive damages is warranted in that the Defendants acts were not only intentional, but also malicious as the conduct of the Defendants resulted in the Plaintiff's wrongful arrest.

## II. JURISDICTION and PARTIES

2. The Plaintiff brings this action under 28 U.S.C. § 1332 for the deprivation of well established rights protected under the U.S. Constitution. In addition, the Defendants JCSO, JCPW, COM, MPD, OSP, and BI, are all entities operating within the State of Oregon. Larson, Adkins, Keever, John Doe I, John Doe II, Baggett, Rodriguez and Davidson, are all individuals who reside in the State of Oregon. Defendant Marrazzo is a resident of the State of Washington. The Plaintiff is a resident of the State of California. All events giving rise to this action took place in Jefferson County, located in Oregon; therefore, this Court's jurisdiction is proper.

## III. FACTUAL ALLEGATIONS

3. The Plaintiff rented a lot from the defendant Davidson from October 2015 through January 2, 2017. During rental interim, Davidson had stated he had a friend, a deputy sheriff, who would provide assistance when Davidson encountered issues beyond his control. In early November 2016, Davidson filed an eviction action. A few days later, a sheriff's patrol vehicle began passing property rented from Davidson. On or about January 3, 2017, Plaintiff vacated property in order to avoid a public record demonstrating Plaintiff's involvement in an eviction action, an act inconsistent with Plaintiff's standing as a licensed real estate broker.

1    4. On or about January 8, 2017, Davidson came knocking at door of new residence

2    location and demanded rents.  Davidson further stated if rents were not paid, Davidson would

3    file court action in order to obtain satisfaction.

4
     5. On or about January 9, 2017, Plaintiff filed an action against Davidson seeking
5
     damages for various tort violations which occurred during the aforementioned occupancy period.
6
7    It was shortly thereafter when Plaintiff first noticed the regularity in which a sheriff patrol

8    vehicle would pass our new place of residence.

9    6. Davidson eventually agreed to resolve civil matter in an out of court settlement;

10   however, the constant patrols by the deputy did not cease.  The constant surveillance consisted of
11
     either a visit into the RV Park to pass directly behind our recreational vehicle or the deputy
12
13   would proceed down Patriot Lane, which runs behind the lot where RV was parked.  The patrol

14   vehicle would drive by and make a u-turn approximately 150 yards away.  In certain instances,

15   the vehicle would sit there for a period of time, and on other occasions, simply turn around and
16
     exit the area.
17
     7. The Defendant may argue such passes are routine but a comment made by our
18
19   neighbor in the Park suggests otherwise as neighbor expressed her dismay and wonder regarding

20   the deputy vehicle's presence in the RV Park.

21   8. On or about May 15, 2017, the Plaintiff moved out of the RV Park and into a home

22   located about a mile to two miles from the RV Park.
23
     9. On or about May 30, 2017, the Plaintiff noticed Davidson's vehicle, a Ford F-150,
24
25   drive by the property, make a u-turn and proceed by property a second time.  It was shortly

26   thereafter when the Plaintiff again noticed the patrol vehicle begin to either pass by property or

27   park near property as if in surveillance.

28

1    10. As of December 18, 2018, nearly 25 months after initial sighting of sheriff's vehicle,

2    the patrols continued on a regular basis.

3    11. In January 2018, the Plaintiff noticed that COM agents were continually traversing

4    
5    the street leading up to private gate restricting access to driveway.  The traffic was noticeable in

6    that street was otherwise a dead end street as identified by street sign when entering street off

7    Butte Avenue.  Butte borders the eastern city limits of Metolius.  The private driveway is located

8    approximately 150 yards east of Butte.

9    12. On or about March 6, 2018, Plaintiff received a call from an individual who stated

10    she was an agent for defendant COM.  The agent inquired as to why there was a gate located at

11    the end of Sixth Street in Metolius restricting public access.  The agent further stated the drive

12    
13    way was in fact an extension of Sixth Street.  The agent added access was needed as it provides

14    direct access to irrigation pump house maintained by COM.

15    13. The Plaintiff advised agent that Plaintiff had been raised in Metolius and the gate in

16    
17    question existed at said location at that time; during said time, the COM and the public at large

18    never had access to driveway; and there was no public record to indicate COM had acquired area

19    through an imminent domain action.  The defendant COM did not contest facts as stated by

20    Plaintiff and disconnected the call.  The defendant COM made no further claim with Plaintiff

21    regarding rightful ownership of area used as a driveway.

22    14. On or about March 11, 2018, Plaintiff reported an act of vandalism to JCSO, the

23    
24    destruction of the gate closing off public access to the driveway entering the Plaintiff's place of

25    residence.

26    15. The defendant, Deputy Ron Larson answered the call and proceeded to take a report,

27    but not before first expressing his views regarding adverse possession. The Plaintiff immediately

28

1   sensed animosity. In an effort to correct officer's perception, Larson was informed of Plaintiff's

2   status as a final year law student and of Plaintiff's registration with the California Bar as a future

3   practicing attorney. The Plaintiff then conversed with Larson regarding the law of adverse

4   possession as applied in Oregon although Plaintiff did not know origin of officer's interest.

5

6   16. Larson then made a comment regarding squatters. At the time the comment was

7   made, the Plaintiff had no reason to question Larson as to comments meaning or place in

8   conversation although Plaintiff did find the comment strange.

9   17. Plaintiff informed Larson that there was a contract dispute with purchase of subject

10  property and to bring resolution, suit had been filed in the US District Court located in Portland,

11  Oregon. Larson retorted something to the effect "I bet you have" or "of course you have."

12

13  18. On or about March 16, 2018, Larson calls and states "since you are not on title or

14  paying rent; you are not entitled to legal protection." It was later learned that Defendant

15  Marrazzo had misrepresented facts to Larson regarding rent payments. In any event, the squatter

16  comment made by Larson five days earlier further substantiates the prejudice and animosity

17  Larson held and continues to hold towards the Plaintiff, as witnessed by the continuous and

18  relentless surveillance.

19

20  19. Although the identity of the deputy in the patrol vehicle is uncertain, circumstantial

21  evidence indicates the occupant to be defendant Larson. Public notice is provided at

22  (https://www.jeffco.net/sheriff) that JCSO, at times, has only one deputy on duty to patrol the

23  entire county which consists of 1791 square miles.

24

25  20. Upon Larson's initial visit on March 11, 2018, Larson had knowledge of certain

26  private facts as they pertain to Plaintiff. Since the information is not public knowledge, it had to

27  have been obtained during the interim of November 2016 through March 11, 2018.

28

21. As further proof, one only needs to look to Larson's report regarding Plaintiff's arrest wherein Larson states he felt compelled to investigate the Plaintiff's right to the property and protection under the law rather than the act of vandalism reported by the Plaintiff.

22. Larson's report also demonstrates that Larson's legal basis for proceeding with JCSO's unlawful entry onto private property and the subsequent unlawful arrest, were all based on erroneous legal conclusions.

23. Plaintiff contends that the documented continuous passes by property by JCSO will correspond with the days and hours Larson patrols Jefferson County, as the unknown deputy typically passes by property five days a week.

24. Furthermore, there was an interim when no patrol vehicle was seen in the area. It was later discovered that Larson had been placed on medical leave during this brief period of respite.

25. On or about March 19, 2018, Plaintiff called JCSO to request a meet with Sheriff Adkins to discuss the matter further, particularly the Plaintiff's right to equal protection under the law.

26. On or about March 28, 2018, the Plaintiff emailed Sheriff Adkins as Adkins had failed to respond to voicemail left some nine days earlier. The contents of the email included evidence establishing Plaintiff's lawful possession of property and applicable Oregon statutes establishing the Plaintiff's right to equal protection under the law.

27. The Sheriff's department mission, as proclaimed on their website available to public, is to "Safeguard all people and their property, serving all equally, with empathy, dignity, and respect." Plaintiff received only discriminatory and disparate treatment from JCSO.

28. The Sheriff asserts that he has an open door policy to the public and an appointment can be made by simply providing notice. JCSO failed to facilitate such a meet to address matter.

1    29. Notice regarding Plaintiff's intent to bring civil action was provided on several

2    occasions, including the day Plaintiff was arrested and subsequently released.  Upon release, the

3    Plaintiff stopped by the JCSO reception desk and provided notice in person as to Plaintiff's

4    desire to confer with Adkins.  The Plaintiff provided notice of intent to proceed with legal action

5    in the event Adkins failed to communicate with Plaintiff as requested.  Adkins never facilitated

6    any meet with the Plaintiff to discuss Plaintiff's right to equal protection under the law.

7

8    30. On April 4, 2018, the Plaintiff observed two men destroying the fence separating the

9    Plaintiff's property from neighboring property.  The two men were later identified as defendants

10   Baggett and Rodriguez.

11

12   31. The Plaintiff confronted Baggett and Rodriguez and insisted they desist.  Baggett

13   responded that fence was not under Plaintiff's control.

14   32. Baggett stated he had obtained approval to proceed with the removal of the fence

15   from defendant COM stating COM agent represented area as being an easement for county road.

16

17   33. In a statement made to law enforcement, Baggett states the landlord, referring to

18   defendant Marrazzo, granted him access to property and permission to remove fence.  In any

19   event, Baggett and Rodriguez continued to destroy the fence and Plaintiff retreated to residence

20   to retrieve cell phone.

21   34. While walking away, and at an approximate distance of twenty yards, the Plaintiff,

22   advised Baggett he was going to retrieve his right arm to which Baggett replied, "What did you

23   say"?  While still walking away and now approximately 30 yards away, Plaintiff repeated the

24   comment to which Baggett replied, "I am going to call the police."  Plaintiff replied, "please do."

25

26   35. The Plaintiff continued walk to residence to retrieve cell phone to call JCSO.

27   36. Once again, Deputy Larson responded and was the first to arrive at the scene.

28

1    37. Rather than investigating the report of property destruction and trespass to land as

2    Plaintiff had anticipated, Larson proceeded to tear down the gate restricting access to private

3    property and entered onto Plaintiff's land absent a warrant and without authority.

4
     38. Larson then proceeded to read Plaintiff his Miranda rights; thereby, providing notice
5
     Plaintiff was under arrest.  Larson then inquired as to whether Plaintiff was carrying a weapon;
6
7    to which the Plaintiff responded "no."

8    39. Larson conducted a pat down search of Plaintiff in search of a firearm, although there

9    is no Oregon statute which precludes a land occupier from carrying a weapon while on private
10
     property under their control.
11
12   40. Larson was subsequently assisted by Deputy Keever representing JCSO.

13   41. In addition, an officer representing MPD and an officer representing OSP, who was

14   armed with an automatic weapon, and who are both unidentified at this point and time entered

15   Plaintiff's land, and acting in concert, deprived the Plaintiff of rights protected under federal law.

16
     Plaintiff found the presence of an automatic weapon discomforting and made a comment to the
17
18   effect.  The OSP officer replied that it is the weapon of choice when dealing with bad people.

19   42. Larson then reiterated his position stating Plaintiff was not entitled to protection since

20   Plaintiff was not the owner of record, nor was the Plaintiff paying rent to substantiate protection.

21   43. Larson made the assertions in the presence of others on multiple occasions.
22
     44. Larson further stated he had gone to the county recorder's office to review property
23
24   maps and had ascertained that the property in question belonged to another party.  .

25   45. The Plaintiff attempted to explain the law of adverse possession in an effort to explain

26   why a conflict existed in public record as to owner of property in question.

27   / / /

28

46. It was at this point in time when the Plaintiff's spouse, Rosanna Lopez, approached Larson in an effort to present evidence as to right to property and statutes regarding adverse possession and the right to defend private property.  Larson would not review the information and directed Ms. Lopez to not interfere or face a potential charge of obstruction.

47. The conversation then centered on facts surrounding encounter with Baggett and Rodriguez.  The Plaintiff relayed events as described herein to Larson.  Larson said Baggett provided testimony that Plaintiff stated "I am going home to retrieve a firearm to "shoot you."

48. The Plaintiff's initial response was "that is ridiculous."  No such words were spoken during the encounter; furthermore, I would seek legal action, evidenced by call made to sheriff's office seeking assistance in matter, rather than using force in the defense of any property."

49. Plaintiff informed Larson that if the deputy and JCSO would not enforce Oregon law, the Plaintiff would seek injunctive relief from the local court to prevent such further trespass activity.  Larson simply grinned at Plaintiff, and then, while laughing, glanced in the direction of the other two officers present, an OSP agent and a MPD agent, who also grinned and laughed in kind.

50. Larson then stated "that's enough" and placed the Plaintiff under arrest.

51. Plaintiff was then handcuffed and placed in patrol vehicle.

52. While sitting in the patrol vehicle, the Mayor of COM, John Chavez, and an agent who represented defendant JCPW, Danny Ortiz, arrived at the scene and carried on a discussion with Larson for approximately 10 minutes.

53. Larson then walked over to Baggett, who was standing approximately 15 feet from the patrol vehicle, and granted Baggett the authority to continue trespass activity and the destruction of the existing fence as well as the gate restricting public access to property.

54. Larson then entered patrol vehicle and transported Plaintiff to JCSO jail facility. It was during the booking process when Larson finally provided the Plaintiff with notice that Plaintiff was being charged with the misdemeanor crime of menacing although events as described by Baggett were permissible under Oregon statutory law.

55. On or about April 6, 2018, the Plaintiff filed a complaint with the Circuit Court in Jefferson County seeking injunctive relief to prevent further trespass activity, property destruction and conversion. Although defendants JCSO, JCPW, Larson, and Baggett were all served with subpoenas to appear in court to present evidence establishing any right to access property in question, no Defendant made an appearance in the matter.

56. On or about April 9, 2018, Plaintiff and ranch hand witnessed Larson and another JCSO deputy carrying on a discussion with Baggett and another individual only known to Plaintiff as the party who had purchased the lot adjacent to Plaintiff's property in the area where continuing trespass activity was being carried on and the area where Plaintiff was arrested. Although Plaintiff does not know the individual by name, the Plaintiff had conversed with unknown person in 2017 and was aware of his intent to build a new home on lot.

57. The Plaintiff believes the information is relevant in that the location of the lot is such that without access to private driveway, the lot is landlocked unless defendant COM converts two residential lots under their ownership to be used as ingress and egress to access said lot.

58. When the conversation ended between the officers and Baggett, Baggett threw his arms up in the air as in frustration and left the property in a hastily fashion. As of February 1, 2019, none of the Defendants including JCSO had returned to the disputed area.

59. Although the Plaintiff repositioned the gate to prevent public access to driveway shortly after the event, there had not been a single complaint or any further challenge made by

COM or JCPW as to the driveway being either a city street or a county road as asserted by both parties, at different times, as described herein.

60. On or about April 30, 2018, Plaintiff filed a motion to dismiss criminal matter since actions as alleged by Baggett, although untrue, were not a crime under Oregon law. The conduct as described by Baggett is permitted under Oregon law when it occurs in the defense of private property and under certain conditions. ORS § 161.225(1)(2)(b) provides in pertinent part:

> A person in lawful possession or control of premises is justified in using physical force upon another when and to the extent . . . the person reasonably believes it necessary to prevent or terminate what the person reasonably believes to be the commission . . . of a criminal trespass . . . . A person may use deadly physical force . . . when the person reasonably believes it necessary to prevent the commission of . . . a felony by force and violence by the trespasser.

61. In this instance, even if said conduct as described by Baggett had taken place, the fact that Plaintiff was outnumbered coupled with the fact that both individuals were armed with tools typically used to remove fence constructed of wire, presented a situation wherein Plaintiff was in danger of being subjected to violence by the trespasser particularly since Baggett had refused to stop as Plaintiff demanded.

62. Baggett had a white bucket of tools at his feet and was holding a crowbar at the time of the encounter while Rodriguez was holding a hammer and a pair of wire cutters. As previously asserted, the encounter ended as Plaintiff left area to notify law enforcement.

63. On or about May 22, 2018, subsequent to State's response in opposition to Plaintiff's motion to dismiss, the court denied Plaintiff's motion and the criminal matter was set for trial.

64. On or about June 18, 2018, after paying $75 to the District Attorney's Office in Jefferson County, the Plaintiff obtained discovery regarding criminal action. The report filed by Larson in the matter differs from discussion with Plaintiff at time of arrest.

65. Larson's statement of events also differs from the report filed by the Deputy Keever, the officer who first interviewed Baggett post incident. Deputy Keever's report corresponds with Plaintiff's narrative as provided to Larson at the time of arrest.

66. The facts as reported by Larson in his affidavit in the matter differ to such an extent that Plaintiff further alleges Larson fabricated evidence in an effort to satisfy the probable cause necessary to justify Plaintiff's wrongful arrest.

67. On or about June 22, 2018, an email was sent to Deputy District Attorney Eyestone questioning Larson's improper use of a tax assessor's map to determine land ownership as well as Larson's failure to comprehend and/or accept the law of adverse possession of which he then based as foundation to draw inaccurate legal conclusions. The Plaintiff also pointed to the inconsistencies in Larson's affidavit as compared to Deputy Keever's report.

68. On or about August 8, 2018, the Plaintiff received an email from the DA's office requesting a meet to discuss merits of criminal case and to discuss a possible settlement.

69. On or about September 3, 2018, the State of Oregon moved to dismiss criminal matter stating there were numerous defenses available at Plaintiff's disposal.

70. As a result of the Defendants' collective actions and omissions, the Plaintiff has been deprived of civil and constitutional rights afforded to all citizens of the United States including protections enumerated under the First, Fourth, and Fourteenth Amendments of the United States Constitution.

71. In that a number of the Defendants are government actors, the acts and omissions of such individuals runs contra to federal law.

72. In addition to the deprivation of the aforementioned rights, the acts or omissions of the Defendants, whether acting severally or in concert, resulted in numerous common torts.

73. The Plaintiff sought assistance from JCSO regarding trespass violations to no avail. The Plaintiff then turned to the chief law enforcement officer in Jefferson County, the D.A.'s office seeking assistance, again to no avail. In a final effort to obtain relief, the Plaintiff sought injunctive relief from the local court only to have the request denied as the court placed a higher priority on procedural requirements rather than protecting the substantive rights of the individual.

74. The record tends to demonstrate that in Jefferson County, persons who are without necessary funds to obtain legal counsel are not afforded equal protection under the law.

75. As a result of the Defendants collective conduct, the Plaintiff has suffered damages which include being subjected to a wrongful arrest which was subsequently made known to the public through publication in local newspaper; and the Plaintiff has been shunned by community members Plaintiff has known for more than 40 years. The charges may have been dismissed, but the stigma attached thereto and the resulting damage to reputation remains.

76. Finally, Larson and fellow officers continued to stalk Plaintiff by continually passing property or parking nearby. In that the conduct was ongoing for more than two years and the Plaintiff was unable to obtain relief within Jefferson County as described herein, the Plaintiff finds it necessary to file said action in the United States District Court in order to prevent further harassment and to place JCSO and all other government actors involved, but not named herein, on notice, that all citizens are entitled to protection under the law, regardless of their race, creed, color, or social status in the community.

## IV. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
#### First Amendment

1. The First Amendment guarantees the right of citizens to speak freely and it protects the individual's right to petition government personnel to redress grievances.

1       2. On March 19 and again on March 28, 2018, the Plaintiff made a concerted effort to

2  meet with defendant Sheriff Adkins to discuss Deputy Larson's failure to provide legal

3  protection; the deputy's faulty reasoning for failing to provide equal protection under the law;

4
  and how law enforcement's failure to provide protection for Plaintiff and family created an

5
6  unreasonably dangerous condition; thereby, subjecting the Plaintiff and his family to potential

7  greater harm than the mere destruction of private property.

8       3. The Plaintiff subsequently experienced that greater harm on April 4, 2018, when the

9  Plaintiff was subjected to an assault, battery, and wrongful arrest.

10       4. The failure on the part of Sheriff Adkins to facilitate a meet with the Plaintiff in order

11
12  to address the Plaintiff's concern regarding equal protection under the law precluded the Plaintiff

13  from exercising First Amendment right to petition government personnel to redress grievances.

14       5. On April 4, 2018, in an effort to redress grievances regarding the officer's presence on

15  land and Plaintiff's unlawful detainment, the Plaintiff advised Larson of Plaintiff's lawful right

16
17  to defend private property under Oregon law, the law of adverse possession and the doctrine of

18  tacking.  It was at that point in time that Larson stated "I've heard enough; turn around and place

19  your hands behind your back; your under arrest."

20       6. Shortly after Larson came onto property, the Plaintiff's spouse attempted to share with

21  Larson evidence that would support Plaintiff's possession of property and Plaintiff's

22  interpretation of substantive law.  The evidence would have also provided Larson with a clearer

23
24  understanding of the law as it was evident to the Plaintiff that Larson was not interpreting the

25  law in a correct manner and that such misinterpretations would result in Plaintiff's arrest.  Larson

26  resisted the evidence and required for spouse to leave area or face an obstruction charge.

27       7. Larson's failure to review evidence regarding Plaintiff's right to possess and defend

28

property and Larson's directive for Plaintiff to desist from engaging in conversation regarding substantive law and Plaintiff's rights was in violation of the Plaintiff's First Amendment right to petition government personnel to redress grievances.

8. As a direct and proximate result of these intentional acts, Plaintiff's constitutionally protected right to petition government personnel to redress grievances was infringed upon, and as a result, the Plaintiff suffered harm.

## SECOND CAUSE OF ACTION
### Fourth Amendment

9. The Fourth Amendment of the U.S. Constitution provides: "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation . . . ."

10. An unreasonable search under the Fourth Amendment occurs when a government agent violates an individual's reasonable expectation of privacy.

11. On April 4, 2018, the Plaintiff reported trespass activity and the destruction of private property of which Plaintiff was in lawful possession.

12. JCSO Deputy Larson responded and then without consent and absent a warrant, came onto private property and subjected the Plaintiff to an unreasonable search. The search was unreasonable as any reasonable person would find such conduct unreasonable in that all owners or rightful possessors of land have the fundamental right to be secure in their houses as well as the right to defend private property from invasion and destruction.

13. A seizure of a person, within the meaning of the Fourth Amendment, occurs when the police's conduct would communicate to a reasonable person that the person is not free to ignore the police presence and leave at his will. The two elements required to constitute a seizure of a

person include the show of authority by the officers and the person being seized submits to the authorities.

14. The show of authority includes factors such as the presence of handcuffs or weapons, the use of forceful language, and physical contact are all strong indicators of authority. In this instance, the instant Larson came onto Plaintiff's property, he read Plaintiff his custodial rights. Larson then subjected the Plaintiff to a pat-down frisk; Larson also stated the Plaintiff was not free to leave the area. In addition to Larson, three other law enforcement officers were present. The agent representing OSP was carrying an automatic weapon. Finally, Larson handcuffed the Plaintiff and placed Plaintiff in patrol vehicle.

15. The person being seized must submit to the authority. The Plaintiff offered no resistance to the wrongful arrest other than verbally attempting to correct Larson's misconstrued understanding, interpretation, and resulting application of substantive law pertinent to the matter. Larson then without probable cause and absent a warrant placed the Plaintiff under arrest, an unreasonable seizure of person, without incident and supported the wrongful arrest through affirmation of an untruthful affidavit.

16. A seizure of property, within the meaning of the Fourth Amendment, occurs when there is some meaningful interference with an individual's possessory interests in the property.

17. Once Plaintiff was secured in patrol vehicle, Larson proceeded to provide Baggett and Rodriguez the authority to continue trespass activity and the destruction of fence line. It is important to note that at the time Plaintiff confronted Baggett and Rodriguez; approximately ten (10) feet of the fence line had been destroyed. Due to consent granted by JCSO agent Larson, twenty-five (25) to thirty (30) yards of fence line is now non-existent. In addition, the materials used to install the fence were subsequently converted by the trespassers.

18. In late April 2018, the Plaintiff was about to leave residence when he encountered two JCSO deputies parked on property. The deputies had again removed a temporary gate and accessed property via the private drive. The private drive is on the backside of the property with little visual access to area from residence. As such, the Plaintiff has no idea as to the duration of time the deputies were on the property. The deputies are not named in action as deputies treated Plaintiff with dignity and respect rather than as a suspect or criminal as Larson and others named herein have treated the Plaintiff.

19. As a result, the Plaintiff found it necessary to secure the property with a temporary fence line in order to ensure the safety of children and spouse. The area contested was cordoned off so even the Plaintiff was no longer able to utilize drive as ingress or egress. The private drive had existed for more than fifty years. The unauthorized access by JCSO and others resulted in a substantial interference with Plaintiff's possessory interests in the private driveway.

20. As a result of the Defendants intentional acts or omissions, the Plaintiff was subjected to an unreasonable search and seizure while within the confines of Plaintiff's private property.

### THIRD CAUSE OF ACTION
#### Fourteenth Amendment

21. Section 1 of the Fourteenth Amendment provides in substantive part: No State shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of liberty without due process of law; nor deny to any person within its jurisdiction the equal protection of the law.

22. The Plaintiff contends the facts demonstrate that arresting officer Larson resisted and suppressed all evidence to support Plaintiff's right to possess land; evidence regarding the doctrine of adverse possession; and Oregon statutory law which permits conduct of the kind Plaintiff was alleged to have committed on the day of arrest. In that Larson refused to review the

evidence, the Plaintiff contends that Plaintiff was deprived of his rightful liberty without due process of law.

23. Larson failed to provide protection on two separate occasions when Plaintiff made calls to the sheriff's department to report acts of vandalism stating Plaintiff and family were not entitled to protection under the law since Plaintiff was not owner of record or paying rent.

24. Adkins failed to provide equal protection as Plaintiff reached out to Sheriff Adkins on several occasions to voice displeasure with Deputy Larson's position regarding Plaintiff's right to equal protection under the law.

25. As a result of defendants Larson, Adkins, Keever, JCSO, John Doe I, and John Doe II's acts or omissions, whether acting severally or in concert, the Plaintiff was denied equal protection under the law and deprived of his liberty without due process of law.

26. Defendants may contend due process was satisfied with criminal proceedings, but Plaintiff contends subjecting an innocent party to the criminal process under the facts as described herein, is not due process, but rather an abuse of the criminal process which can only result in a malicious prosecution.

27. As a result of Defendants conduct as alleged herein, the Plaintiff suffered and continues to suffer harm as described herein.

### FOURTH CAUSE OF ACTION
### U.S.C. § 1983 (Failure to Intervene)

28. Law enforcement officers have a duty to protect individuals from constitutional violations by fellow officers. As such, an officer who witnesses a fellow officer violating an individual's constitutional rights may be liable to the victim for the officer's failure to intervene.

29. Adkins failure to intervene in the matter perpetuated and facilitated the inappropriate conduct of JCSO agent Larson. Adkins failure to intervene in matter resulted in constitutional

1   violations as stated herein.

2      30. The failure of the assisting officers, namely Keever, the OSP agent and the MPD

3   agent, who assisted Larson on the day of Plaintiff's wrongful arrest, resulted in Plaintiff being

4   deprived of constitutionally protected rights, including the right to be secure in home, and the

5   right to speak freely to redress grievances.

6

7      31. As a result of the Defendants acts or omissions, the Plaintiff suffered injury and harm

8   as Plaintiff was not afforded the rights guaranteed under the United States Constitution as alleged

9   herein.

10

11   ### FIFTH CAUSE OF ACTION
   #### Malicious Prosecution

12      32. To establish a claim for malicious prosecution, the victim must demonstrate that the

13   defendant initiated a criminal proceeding which ended in the victim's favor with no conviction.

14   It must also be shown that there was no probable cause to bring the charges and the proceeding

15   was brought with malice toward the victim.

16

17      33. Defendant Larson, an individual who had stalked the Plaintiff for more than fifteen

18   months, and an individual who refused to provide equal protection under the law, initiated

19   criminal proceedings by charging the Plaintiff with the crime of menacing.

20

21      34. The criminal proceedings terminated in Plaintiff's favor.  The district attorney's

22   office moved to dismiss stating there were numerous defenses available at Plaintiff's disposal.

23   The court dismissed the matter with prejudice.

24      35. Larson lacked probable cause but Larson substantiated the arrest based on testimony

25   attained from trespasser Baggett.  Also, Larson's report as to how events unfolded on the day of

26   Plaintiff's arrest differs substantially from the report filed by JCSO Deputy Keever.

27

28      36. Larson's report also differs from the narrative with Plaintiff in the field on the day of

arrest as there was no conversation regarding the demonstrative gestures "pointing at Rodriguez and Baggett" or the chopped up vocabulary "no fence" "kill" as documented in Larson's affidavit.

37. No such information is found in Deputy Keever's report.  Keever was the first to interview Baggett post incident.  Keever's report and Larson's narrative with Plaintiff at time of arrest tend to show that events regarding destruction of property occurred as Plaintiff described.

38. Although the record favored Plaintiff, Larson used the inaccurate affidavit in an attempt to satisfy the probable cause required to substantiate and effectuate Plaintiff's arrest.

39. Regarding malice, the Plaintiff contends the facts as alleged demonstrate that Larson acted with malice, as record demonstrates the existence of an intent that cannot be described as intent to bring justice for some wrongdoing committed by the Plaintiff.  Since Larson's actions have been ongoing and continuous for more than two years, the Plaintiff argues that malice can be implied in the matter at hand.

40. As a result of defendant Larson's acts or omissions, the Plaintiff suffered harm as the Plaintiff was subjected to a malicious criminal prosecution.  The Plaintiff contends that all elements are present in the matter at hand, and as such, an action for malicious prosecution is sustainable.

## SIXTH CAUSE OF ACTION
### Abuse of Process

41. An abuse of process exists where the defendant intentionally misuses a judicial process for a purpose other than that for which the process is intended.  Unlike malicious prosecution, the plaintiff need not establish the lack of probable cause as proof of defendant's improper purpose serves the same function.

42. Larson's conduct as described herein has been carried out for an improper purpose as

the record tends to show that Larson first began stalking the Plaintiff in response and in retaliation for Davidson as Larson first appeared in Plaintiff's life shortly after the dispute with Davidson commenced in November 2016. Plaintiff further asserts there was no other reason for Larson to begin his harassment as Plaintiff had not even received a traffic citation to warrant such attention from JCSO.

43. Marrazzo, Baggett, B.I., JCPW, and COM, whether acting severally or in concert, fabricated and embellished record by making assertions they knew or should have known to be false when parties made the assertion the private driveway was in fact a county road. The false assertions led law enforcement officers to conclude Plaintiff was not entitled to defend area where gate and private driveway was located and to further substantiate wrongful arrest.

44. The record tends to show that Larson then took personal offense to being corrected regarding his understanding of substantive law and in turn increased the harassment by passing property 3-4 times a day. It is important to remember that Larson investigated the Plaintiff when Plaintiff reported a crime, an act of vandalism.

45. The conduct of the deputies then became what can best be described as vengeful. JCSO agents then acted as if in retaliation for the communication sent to Adkins regarding the Plaintiff's right to equal protection under the law and the potential civil liability the department could face, not only for its failure to provide equal protection under the law, but also for any subsequent resulting harm the Plaintiff and his family may suffer due to the department's failure to act as required.

46. Sheriff Adkins failure to intercede in the matter and his subsequent failure to dismiss charges filed by Larson in light of record was also an abuse of the legal process as the process is typically reserved for individuals engaging in criminal behavior and not for those who seek

1  justice through the use of the judicial process or for individuals who assert rights guaranteed and

2  protected under state and federal law.

3      47. The conduct of the defendants Davidson, Marrazzo, Baggett, Rodriguez, B.I., JCPW,

4  COM, Larson, Adkins, and JCSO, as demonstrated by the facts as alleged, tend to show that

5

6  there was an abuse of process as the Defendants intentionally initiated and misused a criminal

7  process for an improper purpose.

8
                    **SEVENTH CAUSE OF ACTION**
                      **Civil Rights Violation**
9

10      48. The Civil Rights Act protects citizens from all discrimination premised on a person's

11  national origin, race, or color.

12      49. The JCSO mission as proclaimed on their public website reads as follows: the

13
    mission of the Jefferson County Sheriff's Office is to "Safeguard all people and their property,
14
    serving all equally, with empathy, dignity, and respect."
15

16      50. The Plaintiff contends that JCSO's failure to provide equal protection under the law

17  was the result of a discriminatory practice which begins and ends with the sheriff in that sheriff

18  upon being duly elected, pledged under oath, to uphold the United States Constitution.

19      51. In further support of Plaintiff's contention regarding Adkins disposition as it pertains

20
    to the minority community, while serving as a deputy for JCSO, a request was made directly to
21
22  Adkins to call in air assistance in order to locate a family member who was missing and under

23  distress.  Adkins' response was cold and callous. Adkins stated there was no need to call in air

24  rescue to locate missing family member; if missing family member had met an untimely demise,

25  the crows and buzzards would make his location known without incurring the cost of calling in

26
    air support.
27
28      52. The Plaintiff further asserts that in no point in time in which the Plaintiff has had

interaction with JCSO and its agents, with the exception of the two officers who came onto

property in late April 2018, Deputy Silence and another unidentified deputy, has the Plaintiff

been treated with dignity and respect. JCSO and its agents have also failed to demonstrate any

empathy towards Plaintiff's position and resulting harms which did not cease even after the

Plaintiff was evicted from subject property.

53. Larson's conduct has displayed a blatant disregard for any right of which Plaintiff

was entitled to as afforded under state and federal law. Larson accepted the testimony of a

trespasser, a Caucasian, who was in clear violation of state law over the word of the land

occupier in lawful possession of the land. Whether or not Larson's acts were racially motivated

cannot be determined at this time, but Plaintiff believes that Larson's arrest record will help to

shed light on the matter.

### EIGHTH CAUSE OF ACTION
#### False Imprisonment

54. False imprisonment is an intentional, unlawful act which confines or restrains an

individual within a bounded area with no reasonable means of escape.

55. The Defendants Larson, Keever, Adkins, JCSO, MPD, John Doe I, OSP, John Doe II,

came onto private property in Plaintiff's lawful possession under their own volition and in an

unlawful manner and then proceeded to confine and restrain Plaintiff by strategically placing

armed officers in positions where Plaintiff had no reasonable means of escape.

56. Larson, Adkins, and JCSO then proceeded to incarcerate the Plaintiff.

57. As a result of the Defendants conduct, the Plaintiff was wrongfully confined within a

bounded area prior to being subjected to a wrongful arrest and false imprisonment.

///

///

## NINTH CAUSE OF ACTION
### Defamation

58. Defamation requires a showing of a defamatory statement about the plaintiff that is published and causes the plaintiff to suffer damages which includes damage to character or personal disgrace that lowers the plaintiff in the eyes of the community or deters third persons from associating with the plaintiff.

59. The Plaintiff is a managing real estate broker licensed in multiple states including the State of Oregon. The Plaintiff is also a full-time law student registered with the California Bar as a future practicing attorney.

60. Defendant Larson repeated and republished a false statement stating Plaintiff was a squatter in the presence of others on multiple occasions.

61. Since Larson could be deemed a public official, the Plaintiff contends that the record also tends to show that Larson acted with malice. Larson's conduct over a two year period has been carried out with malevolence as actions arguably demonstrate evil intent. Larson's rancor regarding adverse possession, squatters, and pending lawsuit, and his failure to provide legal protection when the Plaintiff reported acts by others precluded under Oregon law, also arguably demonstrate animus. Larson ignored all substantive law in support of Plaintiff's position in matter whether it was Oregon statutes, common law rulings, or rights afforded and protected under the United States Constitution. Larson wrongfully used a tax assessor's map to establish property ownership.

62. Finally, Larson fabricated evidence to substantiate Plaintiff's arrest.

63. The conduct attributed to Plaintiff is not conducive or in line with Plaintiff's line of employment or Plaintiff's status as a law school graduate registered with the California Bar as a future practicing attorney.

64. As a result of the Defendant's conduct, the Plaintiff has suffered damages in that Plaintiff was denied equal protection under the laws, shunned and ridiculed by community members, and subjected to harassment and arrest.

**TENTH CAUSE OF ACTION**
**Defamation "Libel and Slander Per Se"**

65. Defamation "slander per se" is a published false statement about the plaintiff wherein the plaintiff is accused of a criminal offense involving moral turpitude which causes the plaintiff to suffer damages.

66. Baggett published a false statement when he verbally (slander per se) reported that Plaintiff had threatened to shoot him if he did not stop removing fence as Plaintiff demanded.

67. Baggett then provided an affidavit (libel per se) to be used in a criminal prosecution.

68. Larson published a false statement by fabricating evidence in the form of an untruthful affidavit in order to be used in a criminal prosecution against the Plaintiff.

69. Plaintiff contends that the record demonstrates Larson carries a certain animus or prejudice towards Plaintiff, and as a result of said animus, Larson acted with malice.

70. As a result of the Defendant's conduct, the Plaintiff has suffered damages and harm in the form of shame and ridicule in the community, harassment, wrongful arrest, and subjected to criminal prosecution.

**ELEVENTH CAUSE OF ACTION**
**Assault**

71. Assault is a voluntary act that intentionally causes reasonable apprehension of an imminent harmful or offensive contact.  In order to sustain an action for assault, it must be shown that the defendant desired or was substantially certain action would cause apprehension and that the plaintiff perceived the potential harmful or offensive contact.

72. The conduct of the officers on the day Plaintiff was wrongfully arrested as described herein caused the Plaintiff to suffer a reasonable apprehension that an imminent or offensive contact was certain in that officers had torn down a gate to come onto Plaintiff's property without consent and absent of warrant. The presence of an officer holding an automatic weapon and the subsequent comment regarding bad persons instilled further apprehension.

73. The record and facts will show Larson not only desired for Plaintiff to suffer apprehension of an offensive contact, Larson also intended to cause the offensive or harmful contact with Plaintiff with the ultimate desire of effectuating Plaintiff's wrongful arrest.

74. As a result of conduct of all the officers involved at the time Plaintiff was arrested, the Plaintiff not only suffered a reasonable apprehension a harmful contact was imminent, the Plaintiff ultimately was subjected to harmful and offensive contact in the form of a pat-down frisk and being placed in handcuffs.

## TWELVTH CAUSE OF ACTION
### Battery

75. In order to establish a claim for the common law tort of battery, the plaintiff must demonstrate that the defendant acted in a voluntary manner with the intent to cause harmful or offensive contact with plaintiff, without plaintiff's consent, which either directly or indirectly produces such contact.

76. Larson under his own volition committed a trespass and came onto Plaintiff's land without consent or authority as Larson was not in possession of a warrant and with the intent to cause a harmful or offensive contact with Plaintiff.

77. Larson committed an offensive contact when Larson performed a pat-down frisk and committed battery by placing Plaintiff in handcuffs.

78. As a result of Larson's conduct, the Plaintiff suffered harm in the form of being

1    subjected to a wrongful arrest.

2                    **THIRTEENTH CAUSE OF ACTION**
3                **Invasion of Privacy (Intrusion Into Seclusion)**

4           79. An intrusion into seclusion, a form of invasion of privacy occurs when the defendant

5    unreasonably intrudes upon the plaintiff's right to physical solitude or right to the privacy of

6    affairs and concerns.

7           80. The conduct of the Defendants has interfered with plaintiff's right to seclusion. The

8    intrusions in the instant matter include both physical intrusions upon property, most notably the

9    day of arrest, and non-physical intrusions wherein defendants routinely pass by the property at
10
     ten (10) to fifteen (15) miles per hour or park nearby property positioned in such a manner that
11
12   surveillance activities were feasible.

13          81. The physical intrusions consist of the destruction of the gate and the fence protecting
14
     private property and the subsequent trespass onto Plaintiff's property by defendants BI, Baggett,
15
16   Rodriguez, JCSO, Larson, Keever, OSP, OSP agent, MPD, MPD agent, JCPW, and COM.  The

17   intrusion, which resulted in Plaintiff's arrest, was an unreasonable intrusion that any reasonable

18   person would find highly offensive.

19          82. The non-physical intrusions include the routine passes by property at ten (10) to
20
     fifteen (15) miles per hour.  At other times, the defendants would park nearby and position the
21
22   patrol vehicle in such a manner to permit surveillance activities.  In any event, the Defendants

23   mere presence on such a consistent basis was an unreasonable intrusion into Plaintiff's seclusion

24   as any reasonable person would find the conduct highly objectionable particularly when viewed
25
     in context and under the set of facts as alleged herein.
26
27          83. With respects to Defendant Davidson, the record arguably demonstrates Davidson

28   was the party who was responsible for Larson's presence in Plaintiff's realm.

84. As a result of the Defendants BI, Baggett, Rodriguez, JCSO, Larson, Keever, OSP, OSP agent, MPD, MPD agent, JCPW, COM and Davidson's conduct, whether acting severally or in concert, the Defendants have interfered with Plaintiff's right to privacy and solitude.  Also, in that said actions persisted for more than two years, the Plaintiff contends that in addition to damages, Plaintiff is entitled to an award of punitive damages.

## FOURTEENTH CAUSE OF ACTION
### Private Nuisance

85. Private nuisance is a substantial and unreasonable interference with plaintiff's use and enjoyment of real property under plaintiff's lawful possession.

86. The conduct of Defendants Baggett, Rodriguez, BI, COM, JCPW, Larson, JCSO, and Davidson as alleged and described herein has resulted in an unreasonable and substantial interference with Plaintiff's use and enjoyment of real property.

## FIFTEENTH CAUSE OF ACTION
### Portrayal in a False Light

87. The tort of portrayal in a false light is present when the defendant publishes information that is communicated to a substantial number of people which portrays the plaintiff in a false light.

88. The defendant Larson filed a false affidavit to support a charge of menacing by asserting the Plaintiff had threatened to kill Baggett and Rodriguez.  The incident as described portrays the Plaintiff in a false light as the information describes the Plaintiff as a danger and menace to society.

89. The defendant JCSO then made the information public through publication in the Jefferson Pioneer, a newspaper serving the area comprising Jefferson County.

90. As a result of the Defendants conduct, Baggett, Rodriguez, Larson, B.I., and JCSO,

1   the Plaintiff has suffered harm as described herein as Plaintiff was shunned by some community

2   members Plaintiff has known a lifetime whereas prior to incident, said individuals acknowledged

3   and conversed with Plaintiff on a regular basis.

## SIXTEENTH CAUSE OF ACTION
### Intentional/Negligent Infliction of Emotional Distress (IIED, NIED)

91. Any intentional act which amounts to extreme and outrageous conduct as viewed by a
reasonable person that in turn causes the plaintiff to suffer mental distress will suffice to sustain
an action for IIED. A negligent act leading to same result suffices to sustain action for NIED.

92. The conduct of the defendants Davidson, Larson, JCSO, JCPW, Baggett, Rodriguez,
BI, and COM as described herein has been intentional and would be deemed as extreme and
outrageous conduct by any reasonable person.

93. The conduct of defendant Adkins resulted in Plaintiff suffering emotional distress;
however, since it cannot be determined whether Adkins' conduct was intentional or simply
negligent, the elements to support an action for the negligent infliction of emotional distress are
present at time of filing of Complaint.

94. As a result of the Defendants extreme and outrageous acts, whether acting severally
or in concert, the Plaintiff suffered severe emotional distress which included hospitalization due
to stress associated from adverse treatment which included harassment, public dispersions, a
wrongful arrest, and the stress associated with being subjected to criminal prosecution.

## SEVENTEENTH CAUSE OF ACTION
### Trespass

95. To sustain a claim for trespass, plaintiff must show the existence of an ownership or
possessory interest in the land, an intentional invasion of that interest, and harm to the interest.

96. The Plaintiff had a possessory interest in that Plaintiff was under contract, a contract

1    which was in dispute at time in an Oregon Circuit Court, and was in possession of property.

2    97. The Defendants Baggett, Rodriguez, BI, Larson, Keever, JCSO, MPD, John Doe I,

3    OSP, John Doe II, JCPW, and COM, acting severally or in concert, intentionally entered upon

4    Plaintiff's land without consent or authority as described herein.

5

6    98. As a result of the Defendants actions, the Plaintiff has suffered harms as described

7    herein as Plaintiff was no longer able to use area as the gate and fence which once provided

8    complete privacy to property no longer exists.  The Defendants acts in total led to the destruction

9    of said items and to Plaintiff's inability to access private driveway.

10

### Punitive Damages

11

12    99. The conduct of Defendants as described herein has been extreme and outrageous.

13    The Defendants' conduct as described demonstrates a reckless disregard for Plaintiff's rights

14    under state and federal law.  The acts and omissions as described were willful and performed

15    with actual or implied malice with a designed intent to oppress.  In some instances, the conduct

16    was even fraudulent.  In all instances, the conduct was egregiously insidious.  As such, punitive

17    damages are appropriate and should be imposed in this instance against defendants Davidson,

18    Larson, Adkins, Baggett, Rodriguez, Marrazzo, JCSO, COM, JCPW, and B.I.

19

20    ### V. DEMAND FOR JURY TRIAL

21    100. The Plaintiff demands a trial by jury for all issues triable by right.

22    ### VI. PRAYER FOR RELIEF

23

24    WHEREFORE, based on the conduct of each individual as described herein, the Plaintiff

25    respectfully prays for judgment against the Defendants as follows:

26    1. For the conduct of agents Larson and Adkins representing Jefferson County Sheriff's

27    Office as it pertains to First Amendment violation, that the defendant JCSO be held liable in an

28

1    amount to be determined at trial, but in no event, less than one-million dollars ($1,000,000);

2        2. For the conduct of Larson and Keever acting as agents, as it pertains to Fourth

3    Amendment violations, that defendant JCSO be held liable in an amount to be determined at

4    trial, but in no event, less than five-million ($5,000,000)

5        3. For the conduct of the defendants, acting as individuals, in violation of Fourth

6    Amendment protections, that defendants be held severally liable in an amount to be determined

7    at trial, but in no event, less than as follows; Larson three-hundred thousand dollars ($300,000),

8    Adkins four-hundred thousand dollars ($400,000); Keever fifty-thousand dollars ($50,000),

9    MPD unidentified agent John Doe I fifty-thousand dollars ($50,000), and OSP unidentified agent

10

11   John Doe II fifty-thousand dollars ($50,000);

12       4. For the conduct of agents representing JCPW which resulted in violations of Plaintiff's

13   4th Amendment rights, including the failure to intervene and false imprisonment, that defendant

14

15   JCPW be held liable for an amount to be determined at trial, but in no event, less than five-

16   million dollars ($5,000,000);

17       5. For the conduct of agents representing the City of Metolius which resulted in

18   violations of the Fourth Amendment of the US Constitution, including the failure to intervene

19   and false imprisonment, that the defendant COM be held liable in an amount to be determined at

20

21   trial, but in no event, less than ten-million dollars ($5,000,000);

22       6. For the conduct of Larson, Adkins, and Keever, acting as agents as it pertains to

23   Fourteenth Amendment violations, that the defendant JCSO be held liable for an amount to be

24

25   determined at trial, but in no event, less than five-million dollars ($5,000,000).

26       7. For the conduct of agents representing JCPW which resulted in violations of Plaintiff's

27   14th Amendment rights, that defendant JCPW be held liable for an amount to be determined at

28

1   trial, but in no event, less than five-million dollars ($5,000,000);

2       8. For the conduct of agents representing the City of Metolius which resulted in

3   Fourteenth Amendment violation, that the defendant COM be held liable in an amount to be

4   determined at trial, but in no event, less than five-million dollars ($5,000,000);

5

6       9. For the conduct of agents representing Oregon State Police and the Madras Police

7   Department which resulted in violations of the Fourth and Fourteenth Amendments of the US

8   Constitution, including the failure to intervene and false imprisonment, that the defendants MPD

9   and OSP be held severally and jointly liable in an amount to be determined at trial, but in no

10  event, less than ten-million dollars ($10,000,000);

11

12      10. For the conduct of the defendants, acting as individuals in the matters referenced in

13  Prayer Paragraphs 1 through 9 as named herein, to each be held severally liable in an amount to

14  be determined at trial, but in no event, less than as follows; Larson three-hundred thousand

15  dollars ($300,000), Adkins four-hundred thousand dollars ($400,000); Keever fifty-thousand

16  dollars ($50,000), MPD agent John Doe I fifty-thousand dollars ($50,000), and OSP agent John

17  Doe II fifty-thousand dollars ($50,000);

18

19      11. For the conduct of Larson and Adkins, acting as agents, as it pertains to malicious

20  prosecution, that the defendant JCSO be held liable in an amount to be determined at trial, but in

21  no event, less than one-million dollars ($1,000,000);

22      12. For the conduct of Larson and Adkins, acting as individuals, as it pertains to

23  malicious prosecution, that defendants each be held severally liable in an amount to be

24  determined at trial, but in no event, less than fifty-thousand dollars ($50,000) each;

25

26      13. For the conduct of Larson, Adkins, Baggett, Rodriguez, COM agent, and JCPW

27  agent, regarding abuse of process, that defendants JCSO, JCPW, COM, and B.I. be held

28

severally and jointly liable in an amount to be determined at trial, but in event, less than five-million dollars ($5,000,000);

14. For the conduct of Larson, Adkins, Baggett, Rodriguez, Davidson, and Marrazzo, acting as individuals, regarding abuse of process, that the defendants be found severally liable in an amount to be determined at trial, but in no event, less than as follows, Larson fifty-thousand dollars ($50,000), Adkins fifty-thousand dollars ($75,000), Baggett fifty-thousand dollars ($100,000), Rodriguez fifty-thousand dollars ($50,000), Davidson two-hundred thousand dollars ($200,000), and Marrazzo two-hundred thousand dollars ($200,000);

15. For the conduct of Larson and Adkins, acting as agents, which resulted in civil rights violations, that defendant JCSO be held liable in an amount to be determined at trial, but in no event, less than ten-million dollars ($10,000,000);

16. For the conduct of Larson and Adkins, acting as individuals, which resulted in discrimination, that each defendant be held liable in an amount to be determined at trial, but in no event, less than one-hundred thousand dollars ($100,000) each;

17. For conduct resulting in false imprisonment, Larson, Keever, Adkins, John Doe I, John Doe II, City of Metolius Agent, and Jefferson County Public Work's Agent, all acting as agents, that defendants JCSO, JCPW, COM, MPD, and OSP be held severally and jointly liable in an amount to be determined at trial, but in no event, less than ten-million dollars ($10,000,000);

18. For conduct resulting in false imprisonment, that defendants Larson, Keever, Adkins, John Doe I, and John Doe II, all acting as individuals, that the Defendants be held severally liable in an amount to be determined at trial, but in no event, less than as follows: Larson and Adkins one-hundred thousand dollars ($100,000) each, Keever, John Doe I, and John Doe II,

fifty-thousand dollars ($50,000) each;

19. For the conduct of the defendant Larson as it pertains to defamatory statement, that the defendant be held severally liable as an individual in an amount to be determined at trial, but in no event less than fifty-thousand dollars ($50,000);

20. For the conduct of defendants Larson, Adkins, Baggett and Rodriguez, acting as agents, as it pertains to defamatory "per se" statement, that the defendants JCSO and B.I. be held severally and jointly liable in an amount to be determined at trial, but in no event, less than five-million dollars ($5,000,000);

21. For the conduct of the defendants Larson, Adkins, Baggett, and Rodriguez, acting in an individual capacity for defamatory "per se" statement, that the defendants be held severally liable in an amount to be determined at trial, but in no event, less than as follows, Larson two-hundred thousand dollars ($200,000), Adkins three-hundred thousand dollars ($300,000), Baggett two-hundred fifty thousand dollars ($250,000), and Rodriguez two-hundred fifty thousand dollars ($250,000);

22. For the conduct of the defendants Larson, Keever, MPD unidentified agent John Doe I, OSP unidentified agent John Doe II, JCPW, COM, and Baggett and Rodriguez resulting in an assault, and all acting as agents, that the defendants JCSO, MPD, OSP, JCPW, COM and B.I., be held severally and jointly liable in an amount to be determined at trial, but in no event, less than six-hundred-thousand dollars ($600,000);

23. For the conduct of Larson, Keever, John Doe I, John Doe II, Baggett, and Rodriguez, all acting as individuals which resulted in an assault, to be held severally liable in an amount to be determined at trial, but in no event, less than twenty-five thousand dollars ($25,000) each;

24. For the conduct of defendants Larson, JCPW, COM, Baggett, and Rodriguez, acting

as agents, which resulted in battery, that the defendants JCSO, JCPW, COM, and B.I., be held liable in an amount to be determined at trial, but in no event, less than two-hundred thousand dollars ($200,000);

25. For the conduct of Larson, acting as an individual, that Larson be held personally Liable for battery in an amount to be determined at trial, but in no event, less than ten-thousand dollars ($25,000);

26. For the conduct of the defendants Larson, Keever, Baggett, and Rodriguez, all acting as agents, that the defendants JCSO, B.I., COM, and JCPW be held severally and jointly liable for intrusion into seclusion in an amount to be determined at trial, but in no event, less than one-million dollars ($1,000,000);

27. For the intrusion into seclusion of the defendants as individuals, in an amount to be determined at trial, but in no event, several liability imposed as follows, Larson one-hundred thousand dollars ($100,000), Davidson one-hundred thousand dollars ($100,000), Keever ten-thousand dollars ($10,000), Baggett twenty-five thousand dollars ($25,000), and Rodriguez five-thousand dollars ($5,000);

28. For the conduct of Larson, Keever, John Doe I, John Doe II, COM agent, JCPW agent, Baggett and Rodriguez resulting in an invasion of privacy, and all acting as agents, that the defendants JCSO, JCPW, COM, B.I., MPD and OSP be held severally and jointly liable in an amount to be determined at trial, but in event, less than one-million, five-hundred thousand dollars ($1,500,000);

29. For the conduct of Larson, Keever, John Doe I, John Doe II, Baggett, Rodriguez, and Davidson which resulted in an invasion of privacy, all acting as individuals, be held severally liable in an amount to be determined at trial, but in no event, less than as follows: Keever, John

Doe I, John Doe II, and Rodriguez twenty-thousand dollars ($20,000) each, Larson, Baggett, and Davidson one-hundred thousand dollars ($100,000) each;

30. For the conduct of the defendants Larson, Baggett and Rodriguez, all acting as agents, that the defendants JCSO and B.I. be held severally and jointly liable for private nuisance in an amount to be determined at trial, but in no event, less than one-million dollars ($1,000,000);

31. For the conduct of the defendants as individuals resulting in private nuisance, in an amount to be determined at trial, but in no event, several liability imposed as follows, Larson one-hundred thousand dollars ($100,000), Davidson one-hundred thousand dollars ($100,000), Baggett one-hundred thousand dollars ($100,000), and Rodriguez one-hundred thousand dollars ($100,000);

32. For the conduct of the defendants Larson and Adkins, acting as agents, that the defendant JCSO be held liable for portraying the Plaintiff in a false light in an amount to be determined at trial, but in no event, less than five-million dollars ($5,000,000);

33. For the conduct of the defendants Larson and Adkins, acting as individuals, that the defendants be held liable for portraying the Plaintiff in a false light in an amount to be determined at trial, but in no event, less than one-hundred thousand dollars ($100,000) each;

34. For the extreme and outrageous conduct of the defendants JCPW, COM, Larson, Baggett, and Rodriguez, all acting as agents, that the defendants JCSO, JCPW, COM, and B.I., be held severally and jointly liable for IIED or NIED in an amount to be determined at trial, but in no event, less than four-million dollars ($4,000,000);

35. For the intentional outrageous conduct of the defendants acting as individuals, in an amount to be determined at trial, but in no event, several liability of no less than as follows, Larson one-hundred thousand dollars ($100,000), Baggett one-hundred thousand dollars

($100,000), Rodriguez fifty-thousand dollars ($50,000), Davidson one-hundred thousand dollars ($100,000), and Marrazzo one-hundred thousand dollars ($100,000);

36. For the negligent and outrageous conduct of Adkins, acting as an individual, several liability of ($100,000);

37. For conversion resulting from the acts of the defendants Larson, Adkins, Baggett, Rodriguez, JCPW, COM, all acting as agents, that the defendants JCSO, JCPW, COM, and B.I., be held severally and jointly liable in an amount to be determined at trial, but in no event, less than five-thousand dollars ($5,000);

38. For trespass, that the defendants, JCSO, JCPW, COM, MPD, OSP, and B.I. be held liable a nominal amount of $100 per defendant for the conduct of their respective agents;

39. For trespass, that the defendants, Larson, Keever, John Doe I, John Doe II, Baggett, and Rodriguez, acting as individuals, be held liable a nominal amount of ($100) each;

40. The complete destruction of arrest record in its entirety including pictures, report, fingerprints, evidence, as well as court filings and court record; and

41. A public apology disseminated to the public in the same manner Plaintiff's wrongful arrest was disseminated, more specifically, an apology and retraction published in The Madras Pioneer, stating sheriff department's error and the wrongful actions of all agents which resulted in a malicious and wrongful arrest;

42. The Plaintiff also seeks punitive damages, in an amount to be determined at trial and as the court deems just and proper, against the defendants Davidson, Larson, Adkins, JCSO, COM, JCPW, B.I., Baggett, Rodriguez, and Marrazzo;

43. For any further relief this Court may deem as just and proper or necessary based on events as stated herein and subsequently established at trial.

Date: September 2, 2019                    Respectfully submitted,


Edward Hernandez
Plaintiff (*Pro Se*)
eh@paccorealty.com
559-779-2425