IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **EDWARD HERNANDEZ**, | Case No. 3:19-cv-1404-JR |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **JEFFERSON COUNTY SHERIFF'S OFFICE**, *et al.*, | |
| Defendants. | |

**Michael H. Simon, District Judge.**

United States Magistrate Judge Jolie A. Russo issued Findings and Recommendation in this case on May 6, 2020. ECF 51. Judge Russo recommended that the motions to dismiss filed by Defendants Robert Marrazzo ("Marrazzo"), Barry Davidson ("Davidson"), and the Oregon State Police Department ("OSP") be granted, and claims asserted against them dismissed, some without leave to amend. Plaintiff objects to all the findings and recommendations and requests a *de novo* review by this Court. After considering *de novo* the Findings and Recommendation, the objections, the responses, and the underlying briefing filed before Judge Russo, for the reasons discussed below, the Findings and Recommendation is adopted in part, and the motions to dismiss are granted in part.

**STANDARDS**

**A. Review of a Findings and Recommendation**

Under the Federal Magistrates Act ("Act"), the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). If a party files objections to a magistrate judge's findings and recommendations, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; Fed. R. Civ. P. 72(b)(3).

For those portions of a magistrate judge's findings and recommendations to which neither party has objected, the Act does not prescribe any standard of review. *See Thomas v. Arn*, 474 U.S. 140, 152 (1985) ("There is no indication that Congress, in enacting [the Act], intended to require a district judge to review a magistrate's report to which no objections are filed."); *United States. v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (holding that the court must review *de novo* magistrate judge's findings and recommendations if objection is made, "but not otherwise"). Although in the absence of objections no review is required, the Act "does not preclude further review by the district judge[] *sua sponte* . . . under a *de novo* or any other standard." *Thomas*, 474 U.S. at 154. Indeed, the Advisory Committee Notes to Fed. R. Civ. P. 72(b) recommend that "[w]hen no timely objection is filed," the Court review the magistrate judge's recommendations for "clear error on the face of the record."

**B. Rule 12(b)(5) Service of Process**

Rule 12(b)(5) of the Federal Rules of Civil Procedure provides for a motion to dismiss for "insufficient process." The sufficiency of process is governed by Rule 4 of the Federal Rules of Civil Procedure. Rule 4(m) requires that a defendant be served within 90 days or a court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Rule 4(e) explains how to serve an individual within the United States, and

includes that following state law within the jurisdiction where service is made or the action is

filed constitutes sufficient service.

Under Oregon law, service may be made by:

> personal service of true copies of the summons and the complaint upon defendant or an agent of defendant authorized to receive process; substituted service by leaving true copies of the summons and the complaint at a person's dwelling house or usual place of abode; office service by leaving true copies of the summons and the complaint with a person who is apparently in charge of an office; service by mail; or service by publication.

Or. R. Civ. P. 7D(1).

Substituted service is further defined as:

> Substituted service may be made by delivering true copies of the summons and the complaint at the dwelling house or usual place of abode of the person to be served to any person 14 years of age or older residing in the dwelling house or usual place of abode of the person to be served. Where substituted service is used, the plaintiff, as soon as reasonably possible, shall cause to be mailed by first class mail true copies of the summons and the complaint to the defendant at defendant's dwelling house or usual place of abode, together with a statement of the date, time, and place at which substituted service was made. For the purpose of computing any period of time prescribed or allowed by these rules or by statute, substituted service shall be complete upon the mailing.

Or. R. Civ. P. 7D(2)(b).

Service by mail is further defined as:

> When service by mail is required or allowed by this rule or by statute, except as otherwise permitted, service by mail shall be made by mailing true copies of the summons and the complaint to the defendant by first class mail and by any of the following: certified, registered, or express mail with return receipt requested. For purposes of this paragraph, "first class mail" does not include certified, registered, or express mail, return receipt requested, or any other form of mail that may delay or hinder actual delivery of mail to the addressee.

Or. R. Civ. P. 7D(2)(d)(i). Service by mail is considered complete "on the day the defendant, or

other person authorized by appointment or law, signs a receipt for the mailing, or 3 days after the

mailing if mailed to an address within the state, or 7 days after the mailing if mailed to an

address outside the state, whichever first occurs." *Id.* 7D(2)(d)(ii).

When a defendant challenges service, the plaintiff bears the burden of establishing the

validity of service as governed by Rule 4 of the Federal Rules of Civil Procedure. *See*

*Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). There are "two avenues for relief" under

Rule 4(m). *Lemoge v. United States*, 587 F.3d 1188, 1198 (9th Cir. 2009). "The first is

mandatory: the district court must extend time for service upon a showing of good cause. The

second is discretionary: if good cause is not established, the district court may extend time for

service upon a showing of excusable neglect." *Id.* (citations and footnotes omitted); *see also*

*Efaw v. Williams*, 473 F.3d 1038, 1040 (9th Cir. 2007) ("Rule 4(m), as amended in 1993,

*requires* a district court to grant an extension of time when the plaintiff shows good cause for the

delay. Additionally, the rule *permits* the district court to grant an extension even in the absence

of good cause." (emphasis in original) (citation omitted)).

The Ninth Circuit has stated that excusable neglect may suffice to show good cause. *See,*

*e.g.*, *Lemoge*, 587 F.3d at 1198 n.3. A plaintiff, however, also may "be required to show the

following [additional] factors to bring the excuse to the level of good cause: '(a) the party to be

served personally received actual notice of the lawsuit; (b) the defendant would suffer no

prejudice; and (c) plaintiff would be severely prejudiced if his complaint were dismissed.'" *Id.*

(quoting *Boudette v. Barnette*, 923 F.2d 754, 756 (9th Cir. 1991)); *see also In re Sheehan*, 253

F.3d 507, 512 (9th Cir. 2001). Further, a defendant's evasion of service may constitute good

cause. *See Wei v. State of Hawaii*, 763 F.2d 370, 371-72 (9th Cir. 1985) (per curiam). In

considering excusable neglect for discretionary extensions, a district court may consider factors "like a statute of limitations bar, prejudice to the defendant, actual notice of a lawsuit, and eventual service." *Efaw*, 473 F.3d at 1040.

"Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." *Whidbee v. Pierce County*, 857 F.3d 1019, 1023 (9th Cir. 2017) (quoting *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988)). "However, 'neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction without substantial compliance with Rule 4.'" *Travelers Cas. & Sur. Co. of Am. v. Brenneke*, 551 F.3d 1132, 1135 (9th Cir. 2009) (citing *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986) (citation and quotes omitted)).

## C. Rule 12(b)(6) Failure to State a Claim

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir.

2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epstein Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

A court must liberally construe the filings of a self-represented, or *pro se*, plaintiff and afford the plaintiff the benefit of any reasonable doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). "Unless it is absolutely clear that no amendment can cure the defect, . . . a *pro se* litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Garity v. APWU Nat'l Labor Org.*, 828 F.3d 848, 854 (9th Cir. 2016) (alteration in original) (quoting *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam)). Under Federal Rule of Civil Procedure 8(a)(2), however, every complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This standard "does not require 'detailed factual allegations,'" but does demand "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that

offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

Defendants Marrazzo and Davidson move to dismiss claims against them under Rule 12(b)(5) and, in the alternative, under Rule 12(b)(6) for failure to state a claim. Defendant OSP moves to dismiss based on Eleventh Amendment sovereign immunity. OSP also moves to dismiss Plaintiff's claims under the Oregon Tort Claims Act ("OTCA") for failure to provide the requisite notice, under Rule 12(b)(6) for failure to state claim, and generally as improper under Section 1983. Because the Court dismisses Plaintiff's claims against OSP based on Eleventh Amendment sovereign immunity, the Court does not reach OSP's other arguments.

## A. Motion to Dismiss for Insufficient Service of Process

Plaintiff had a third party serve Marrazzo and Davidson. The proof of service filed states that both of these Defendants were served by a having copies of the summons and Complaint sent through first class mail. ECF 17. The proof of service does not describe any other attempts at service. Plaintiff asserts that the process server made numerous attempts to serve Davidson in person and sent the summons and Complaint twice through certified mail with "no reply forthcoming" before mailing the summons and Complaint through first class mail as a last resort. The proof of service, however, does not describe any attempts at personal service or certified mail in the "additional information regarding attempted service" section. Nor did Plaintiff file any receipt for attempted service by certified mail (Plaintiff states they were "misplaced") or a supplemental declaration by the process server attesting to any attempts at service other than by first class mail.

After learning in January 2020 that Marrazzo intended to move to dismiss for insufficient service, Plaintiff purported to re-serve Marrazzo by sending a copy of the summons and

PAGE 7 – OPINION AND ORDER

Complaint through first class mail to counsel for Marrazzo on January 27, 2020. After Davidson filed his Motion to Dismiss, Plaintiff purported to re-serve Davidson on March 17, 2020, by having Davidson served via certified mail, return receipt requested. Plaintiff submits a copy of the postal receipt for sending the certified mail package. ECF 39-2 at 2. No signed return receipt was submitted, so it is unknown whether Davidson refused to sign or whether he signed, and Plaintiff did not submit that receipt. Plaintiff responded to the motions to dismiss by arguing that service on both these Defendants constituted substantial compliance with Rule 4. He requested, in the alternative, that if service is not deemed sufficient, the Court should not dismiss his case against Marrazzo and Davidson but should allow Plaintiff to re-serve these Defendants.

Service under Oregon law requires more than only service by first class mail. It requires service by first class *and* registered or certified mail. Thus, Plaintiff's original sending of the summons and Complaint via first class mail to Marrazzo and Davidson was not sufficient service under Oregon law. Mailing the summons and Complaint to Marrazzo's counsel also was not sufficient service. Counsel was not Marrazzo's agent for service of process and had not signed a waiver of service of process. Plaintiff's service on Marrazzo was not proper service and did not substantially comply with Rule 4. *See, e.g.*, *Azzawi v. Brown*, 2015 WL 6460363, at *3 (E.D. Cal. Oct. 26, 2015) (noting that the doctrine of substantial compliance "exists to save instances of ineffective service based on *technical* defects to avoid dismissals that would prejudice the plaintiff" and that service by mail "is far from a technical defect" (emphasis in original)); *Procopio v. Conrad Prebys Tr.*, 2015 WL 4662407 (S.D. Cal. Aug. 6, 2015) (noting that substantial compliance is to address "minor defects in service and prevent dismissal," not to prevent the quashing of improper service).

Plaintiff is representing himself, and *pro se* litigants are given some consideration in federal litigation in that their pleadings are liberally construed. Nonetheless, they are expected to know and comply with the rules of civil procedure. *See, e.g.*, *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995) ("Although we construe pleadings liberally in their favor, *pro se* litigants are bound by the rules of procedure."). Plaintiff has not met his burden to show that he properly served Marrazzo.

Regarding service on Davidson, Plaintiff served him a second time via certified mail, return receipt requested. Thus, Plaintiff served Davidson both via first class mail and certified mail, return receipt requested. That is what is required under Oregon law. Oregon law provides that service is complete upon the signature for the return receipt, of which there is none in the record, or three days after mailing, whichever is sooner. Or. R. Civ. P. 7D(2)(d)(ii). The mailing via certified mail was on January 27, 2020, so service is complete three days later, on January 30, 2020. This is after the 90-day deadline for service set in Rule 4(m).

The Court considers whether Plaintiff has shown excusable neglect for delaying service. The Court considers factors like "a statute of limitations bar, prejudice to the defendant, actual notice of a lawsuit, and eventual service." *Efaw*, 473 F.3d at 1040. All of these factors support a finding of excusable neglect. Plaintiff may face a statute of limitations bar, there is no prejudice to Davidson or Marrazzo, both defendants received actual notice, and Plaintiff will be able to properly serve them, and in the case of Davidson, has already properly served him. This does not, however, rise to the level of good cause *requiring* the Court to provide additional time for Plaintiff to serve Marrazzo and Davidson. Courts, however, generally exercise their discretion by allowing additional time and quashing service instead of dismissing claims in cases under these circumstances. *See Bratset v. Davis Joint Unified Sch. Dist.*, 2016 WL 7212779, at *4 (E.D. Cal.

Dec. 12, 2016) ("'Generally service will be quashed in those cases in which there is a reasonable prospect that the plaintiff will be able to serve the defendant properly.'" (quoting *Crayton v. Rochester Medical Corp.*, 2008 WL 3367604, at *5 (E.D. Cal. Aug. 8, 2008))); *see also Evans v. Nationstar Mortg., LLC*, 2015 WL 6756255, at *4 (E.D. Cal. Nov. 5, 2015); *Procopio v. Conrad Prebys Tr.*, 2015 WL 4662407, at *5-6 (S.D. Cal. Aug. 6, 2015).

The Court will not dismiss Plaintiff's complaint for insufficient service. The Court instead extends the time allowed for service under Rule 4(m) of the Federal Rules of Civil Procedure. The Court finds that the Plaintiff's service through the combined first class mail and certified mail to Davidson is sufficient service. The Court therefore extends the time for service on Davidson through January 20, 2020. Davidson's motion to dismiss based on insufficiency of service is denied and service on Davidson is deemed timely and sufficient.

Plaintiff's attempts to serve Marrazzo are quashed. Plaintiff has 28 days from the date of this Opinion and Order to serve Marrazzo in compliance with Rule 4 of the Federal Rules of Civil Procedure.

## B. Defendant Marrazzo's Motion to Dismiss for Failure to State a Claim

### 1. Abuse of Process

Under Oregon law "'[a]buse of process' is the perversion of a process that is regular on its face to a purpose for which the process is not intended." *Pfaendler v. Bruce*, 195 Or. App. 561, 571 (2004). It has been described as "the use of the process as a club by which to extort something unrelated to the process from the other party." *Id.* (quoting *Clausen v. Carstens*, 83 Or. App. 112, 118 (1986)). "[T]o plead a claim for abuse of process, a plaintiff must allege some ulterior purpose, unrelated to the process, and a willful act in the use of the process that is not proper in the regular conduct of the proceeding." *Id.* Plaintiff alleges that Marrazzo made a false statement to law enforcement officers that led enforcement officers to

PAGE 10 – OPINION AND ORDER

conclude that Plaintiff was not entitled to defend a portion of his property and ultimately that led to Plaintiff's wrongful arrest. These allegations, however, do not include the allegedly unlawful purpose for which Marrazzo allegedly acted. In other words, why did Marrazzo make that allegedly false statement? For example, what was the "something unrelated to the process" that Marrazzo was trying to extort from Plaintiff that Marrazzo was allegedly abusing the process in order to obtain?

Additionally, the "process" alleged by Plaintiff is unclear. It appears that Plaintiff alleging that Marrazzo filed a false police report (or verbally provided a false police report) against Plaintiff that ultimately led to Plaintiff's arrest. Most courts find that filing a false police report is not sufficient "process" to constitute abuse of process. *See, e.g.*, *Taylor v. Clark Cty. Sch. Dist.*, 2019 WL 2453648, at *3 (D. Nev. June 11, 2019) (Nevada law); *Martel v. United States*, , 2012 WL 1555060, at *2 (E.D. Cal. Apr. 27, 2012) (California law); *Hutchens v. Hutchens*, 2007 WL 2320074, at *6 (D. Ariz. Aug. 10, 2007) (Arizona law). Oregon law governing abuse of process is not substantively different from the law in these jurisdictions.

Moreover, although Plaintiff does not allege a fraud claim against Marrazzo, his abuse of process claim relies on an alleged misrepresentation. Rule 9(b) applies to all allegations, or averments, of fraud in all civil cases in federal court, even when fraud is not an essential element of the claim. As explained by the Ninth Circuit:

> In cases where fraud is not a necessary element of a claim, a
> plaintiff may choose nonetheless to allege in the complaint that the
> defendant has engaged in fraudulent conduct. In some cases, the
> plaintiff may allege a unified course of fraudulent conduct and rely
> entirely on that course of conduct as the basis of a claim. In that
> event, the claim is said to be "grounded in fraud" or to "sound in
> fraud," and the pleading of that claim as a whole must satisfy the
> particularity requirement of Rule 9(b). . . .
>
> In other cases, however, a plaintiff may choose not to allege a
> unified course of fraudulent conduct in support of a claim, but

PAGE 11 – OPINION AND ORDER

rather to allege some fraudulent and some non-fraudulent conduct. In such cases, only the allegations of fraud are subject to Rule 9(b)'s heightened pleading requirements. The text of Rule 9(b) requires only that in "all *averments of fraud . . .*, the circumstances constituting fraud . . . shall be stated with particularity." Fed. R. Civ. P. 9(b) (emphasis added).[1] The rule does not require that allegations supporting a claim be stated with particularity when those allegations describe non-fraudulent conduct.

In such cases, application of Rule 9(b)'s heightened pleading requirements only to "averments" of fraud supporting a claim rather than to the claim as a whole not only comports with the text of the rule; it also comports with the rule's purpose of protecting a defendant from reputational harm. As we stated in *In re Stac*, "Rule 9(b) serves to . . . protect professionals from the harm that comes from being subject to fraud charges." 89 F.3d at 1405. Fraud allegations may damage a defendant's reputation regardless of the cause of action in which they appear, and they are therefore properly subject to Rule 9(b) in every case. To require that non-fraud allegations be stated with particularity merely because they appear in a complaint alongside fraud averments, however, serves no similar reputation-preserving function, and would impose a burden on plaintiffs not contemplated by the notice pleading requirements of Rule 8(a).

\* \* \*

Thus, if particular averments of fraud are insufficiently pled under Rule 9(b), a district court should "disregard" those averments, or "strip" them from the claim. The court should then examine the allegations that remain to determine whether they state a claim.

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-05 (9th Cir. 2003) (emphasis in original)

(first alteration added, remaining alterations in original) (citations omitted) (footnote added).

---

[1] An "averment" is a positive declaration or affirmation of fact; an assertion or allegation in a pleading is an averment. Bryan A. Garner, ed., BLACK'S LAW DICTIONARY 156 (9th ed. 2009). In 2007, the text of Rule 9 was amended to make it "more easily understood. . . . These changes are intended to be stylistic only." Fed. R. Civ. P. 9 advisory committee's note 2007 amendment. Thus, the change from "averments of fraud" to "alleging fraud" does not affect this analysis.

The other elements of Plaintiff's abuse of process claim do not need to be alleged with particularity, but the alleged misrepresentation by Marrazzo must be alleged in compliance with Rule 9(b). Plaintiff's allegations supporting his abuse of process claim, with or without the alleged misrepresentation, do not state a claim. Plaintiff's allegations relating to Marrazzo's misrepresentation, however, also do not comply with Rule 9(b). This claim is dismissed with leave to amend if Plaintiff believes he can cure the identified deficiencies. In any amended complaint, however, Plaintiff's allegations relating to Marrazzo's purported misrepresentation must comply with Rule 9(b).

### 2. Intentional Infliction of Emotional Distress

The Court has reviewed this issue *de novo*. The Court adopts this portion of the Findings and Recommendation.

### 3. Negligent Infliction of Emotional Distress

The Oregon Supreme Court has discussed several circumstances under which a plaintiff may recover damages for emotional distress. *See Philbert v. Kluser*, 385 P.3d 1038 (2016). These include: (1) when there is physical injury; (2) when the tortfeasor acted intentionally; (3) "when a defendant negligently causes foreseeable, serious emotional distress and also infringes some other legally protected interest"; and (4) when a bystander perceives serious bodily injury to a close family member. *Id.* at 1041, 1046. Plaintiff appears to be alleging a claim under the third type of negligent infliction of emotional distress. A plaintiff alleging this type of claim "must identify the invasion of an interest that is or should be legally protected, and must also allege the facts otherwise necessary to support a negligence claim." *Id.* at 1042 n.3. Plaintiff fails to identify the legally protected interest he alleges was negligently infringed by Marrazzo, and thus this claim is dismissed with leave to amend.

**C. Defendant Davidson's Motion to Dismiss for Failure to State a Claim**

    **1. Abuse of Process**

Plaintiff's Complaint, liberally construed, includes several allegations relating to his claim of abuse of process against Davidson. Plaintiff alleges that Davidson was Plaintiff's landlord and Davidson stated that he had a friend in the Sheriff's office who would help Davidson upon request. Davidson filed an eviction action against Plaintiff. Plaintiff vacated the property and moved to a new residence. Davidson came to Plaintiff's new residence and demanded money purportedly for back rent from when Plaintiff was a tenant of Davidson's. The next day, Plaintiff filed a court action against Davidson alleging tort claims. Shortly thereafter, Sheriff's patrols regularly began driving by Plaintiff's new residence. Davidson and Plaintiff settled Plaintiff's court case. The Sheriff's patrols, however, continued driving by Plaintiff's new residence. Plaintiff's neighbor allegedly commented that the Sheriff patrols were unusual and concerning. Plaintiff called the Sheriff's office to report vandalism when his gate was damaged. The deputy, Defendant Larson, made a comment about "squatters."

Plaintiff's allegations of abuse of process against Davidson suffer from the same deficiencies as those against Marrazzo. Plaintiff does not allege Davidson's improper purpose (*e.g.*, to get Plaintiff to pay back rent, to drop his lawsuit, or for some other purpose in light of the alleged fact that the allegedly improper patrols continued after Davidson and Plaintiff settled his lawsuit). Plaintiff also does not allege any "process" that is sufficient to state a claim for abuse of process because asking a police officer to repeatedly drive by Plaintiff's house is not "process." *See, e.g.*, Restatement (Third) of Torts: Liab. for Econ. Harm § 26 (2020) ("The word 'process' in the title of this Section does not refer to the legal process generally. It refers to process in the more specific sense of the word familiar to lawyers: the instruments by which courts assert their jurisdiction and command others to appear, act, or desist. In short, 'process'

PAGE 14 – OPINION AND ORDER

generally means orders that are issued by courts at the behest of one of the parties, or that are

otherwise backed by judicial authority."); *Taylor*, 2019 WL 2453648, at *3 ("The tort of abuse of

process protects the integrity of the judicial system by prohibiting malicious use of the courts by

a party with an ulterior motive to resolving a genuine legal dispute."); *Martel*, 2012

WL 1555060, at *2 (noting that an abuse of process claim must involve "the use of the court

process, i.e. action taken pursuant to judicial authority"); *Hutchens*, 2007 WL 2320074, at *6

(noting that process means "encompassing the entire range of court procedures incident to the

litigation process"). This claim is dismissed with leave to amend if Plaintiff believes he can cure

the deficiencies identified by the Court.

### 2. Intentional Infliction of Emotional Distress

The Court has considered this claim *de novo*. The Court adopts this portion of the

Findings and Recommendation.

### 3. Negligent Infliction of Emotional Distress

For the same reasons the Court dismissed this claim against Marrazzo, the Court

dismisses this claim against Davidson. Plaintiff has leave to amend this claim if Plaintiff believes

he can cure the deficiencies identified by the Court.

### 4. Private Nuisance

"A private nuisance is an unreasonable non-trespassory interference with another's

private use and enjoyment of land. The right to recover is in the person whose land is harmed."

*Drayton v. City of Lincoln City*, 244 Or. App. 144, 148 (2011) (quoting *Mark v. Dept. of Fish

and Wildlife*, 158 Or. App. 355, 360 (1999)). To constitute a nuisance, the alleged conduct or

action must "substantially and unreasonably interfere[] with the use and enjoyment of [a]

plaintiff['s] property." *Penland v. Redwood Sanitary Sewer Serv. Dist.*, 156 Or. App. 311, 315

(1998). In making this determination, a court should "assess five factors: (1) the location of the

claimed nuisance; (2) the character of the neighborhood; (3) the nature of the thing complained of; (4) the frequency of the intrusion; and (5) the effect upon the plaintiff's enjoyment of life, health and property." *Id.*

At this stage of the litigation, Plaintiff's allegations are sufficient to link the *initial* increased patrols by the Sheriff's office to Davidson. Plaintiff's allegations are not, however, sufficient to link any continued patrols to Davidson after Davidson and Plaintiff settled their dispute. Indeed, Plaintiff's allegations show that it was Marrazzo, Plaintiff's landlord after Davidson, who allegedly falsely reported that Plaintiff had not paid rent and was a "squatter." Plaintiff alleges this contributed to Larson's ongoing "prejudice and animosity" toward Plaintiff and ongoing "relentless surveillance." *See* Compl. ¶¶ 16-18. These allegations relate to Marrazzo and not Davidson.

Additionally, Plaintiff's allegations fail to show that the Sheriff's patrols created interference that is both substantial and unreasonable. *See Jewett v. Deerhorn Enters., Inc.*, 281 Or. 469, 473 (1978) ("A nuisance, claimed to be an interference with the use and enjoyment of land, is not actionable unless that interference is both substantial and unreasonable."). Plaintiff alleges that patrols would drive by, would sometimes make a u-turn and drive back before exiting, and sometimes would park in the RV lot for a little bit before exiting. Plaintiff alleges that he moved from the RV lot after five months and the patrols continued past his second new residence. He alleges the patrols passed his property or parked nearby.

In Plaintiff's response to Davidson motion to dismiss, Plaintiff provides more details. Plaintiff discusses how the deputies would sit and "glare" at Plaintiff, how they would patrol by his residence nearly every day and sometimes more than once per day, and how the conduct greatly interfered with his ability to use and enjoy his property. Much of this conduct appears

related to the later time period. Additionally, these details are not in Plaintiff's Complaint. His Complaint contains only general allegations that Larson or other deputies would "regularly" drive by, and sometimes park, near Plaintiff's residence. Such allegations do not show a level of harassment that creates a substantial loss of use and enjoyment and of property. Moreover, the Court could not find, and Plaintiff did not cite, any authority for the proposition that even if Plaintiff were to allege more harassing conduct, it would suffice for a private nuisance claim, which is traditionally focused on use of property, not civil harassment against a person. *See, e.g.*, *Crossen v. Diehl*, 2019 WL 1933644, at *5 (Conn. Super. Ct. Apr. 8, 2019) ("The plaintiffs have not cited, and the court has not found, any case holding that harassing conduct itself can create a condition relating to the use of land sufficient to create an actionable, private nuisance."). This claim is dismissed with leave to amend, if Plaintiff believes he can cure the identified deficiencies.

### 5. Invasion of Privacy

Invasion of privacy based on "intrusion upon seclusion," alleged by Plaintiff, requires a plaintiff to show: "(1) an intentional intrusion, physical or otherwise, (2) upon the plaintiff's solitude or seclusion or private affairs or concerns, (3) which would be highly offensive to a reasonable person." *Reed v. Toyota Motor Credit Corp.*, 301 Or. App. 825, 831 (2020). Plaintiff alleges that Davidson committed this tort by causing Larson and other Sheriff's deputies to harass Plaintiff at his two residences. As discussed above, Plaintiff's current allegations do not show that Davidson was connected to the Sheriff's department's activities beyond the initial few months. Additionally, Plaintiff's current allegations are that Sheriff's vehicles drove by an unknown number of times, sometimes made a u-turn, and sometimes parked nearby. This does not rise to a level that would be "highly offensive to a reasonable person." Accordingly, this claim is dismissed with leave to amend.

PAGE 17 – OPINION AND ORDER

**D. Claims Against OSP**

OSP moves to dismiss the claims against it under the Eleventh Amendment. The

Supreme Court has interpreted the Eleventh Amendment generally to prohibit a citizen from

suing a state or state agency in federal court. *See College Savings Bank v. Fla. Prepaid*

*Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 669-70 (1999). Supreme Court case law

establishes that a state is immune from suit in federal court unless Congress has abrogated the

state's immunity by appropriate federal legislation or the state itself has waived it. *Va. Office for*

*Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253-54 (2011). OSP correctly asserts that it is an

"arm" or agency of the State of Oregon. *See, e.g.*, *Wright v. Oregon*, 2002 WL 31474178, at *5-6

(D. Or. Feb. 20, 2002) (finding claims against the Oregon state police barred by the Eleventh

Amendment); *accord Worzala v. Bonner Cty.*, 2007 WL 328829, at *1 (D. Idaho Jan. 31, 2007)

(noting that "the Idaho State Police is an arm of the State of Idaho"); *Shervin v. California State*

*Police Dep't*, 5 F.3d 539 (9th Cir. 1993) (noting that "the California State Police is an arm of the

state").

The State of Oregon has not waived its sovereign immunity from suit in federal court.

The OTCA provides for a limited waiver of sovereign immunity. It is not, however, a waiver of

Eleventh Amendment immunity from suit in federal court. *See Millard v. Or. Dep't of*

*Corrections*, 2014 WL 2506470, at *14 (D. Or. June 3, 2014); *see also Estate of Pond v.*

*Oregon*, 322 F. Supp. 2d 1161, 1165 (D. Or. 2004) ("The [OTCA] is a waiver of sovereign

immunity but does not waive Eleventh Amendment immunity. Thus, suits by private parties

against the state must be brought in state court."). Suits against the state of Oregon under the

OTCA must be brought in state court.

Congress has not abrogated Eleventh Amendment state sovereign immunity for

Section 1983 claims. See *Braunstein v. Ariz. Dept. of Transp.*, 683 F.3d 1177, 1188 (9th

PAGE 18 – OPINION AND ORDER

Cir. 2012). Thus, Plaintiff may not bring an action in federal court asserting a violation of

Section 1983 by the State of Oregon or an arm of the State, such as OSP.

The Supreme Court has held that although a plaintiff may not sue a state official in his or

her official capacity for money damages in a Section 1983 action,[2] a plaintiff may sue a state

official for money damages in his or her personal capacity. *Hafer v. Melo*, 502 U.S. 21, 25

(1991). This is because "[p]ersonal-capacity suits . . . seek to impose individual liability upon a

government officer for actions taken under color of state law." *Id.* Accordingly, "to establish

personal liability in a § 1983 action, it is enough to show that the official, acting under color of

state law, caused the deprivation of a federal right." *Id.* (quoting *Kentucky v. Graham*, 473

U.S. 159, 166 (1985)). Plaintiff, however, has sued OSP, not an OSP official in his or her

personal capacity. Accordingly, Plaintiff's claims against OSP are dismissed without leave to

amend.

## CONCLUSION

The Findings and Recommendation (ECF 51) is ADOPTED IN PART. Defendant Robert

Marrazzo's Motion to Dismiss (ECF 14) and Barry Davidson's Motion to Dismiss (ECF 29) are

GRANTED. Plaintiff's claims against these Defendants are dismissed with leave to amend if

Plaintiff believes in good faith that he can cure the deficiencies identified by the Court in this

---

[2] To establish Section 1983 liability, a plaintiff must prove "(1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012) (citation omitted). The Supreme Court has held that state officials acting within their official capacity are not "persons" within the meaning of § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64, 71 (1989). Instead, the suit "is not a suit against the official but rather is a suit against the official's office" and as such "is no different from a suit against the State itself." *Id.* This definition of "person" must be applied to all Section 1983 claims, whether brought in state or federal court. *Howlett By & Through Howlett v. Rose*, 496 U.S. 356, 375-76 (1990). Thus, a state official cannot be sued under § 1983 in his or her official capacity for monetary relief.

Opinion and Order. Defendant Oregon State Police's Motion to Dismiss (ECF 25) is

GRANTED. Plaintiff's claims against this Defendant are dismissed without leave to amend. Any

amended complaint must be filed within 14 days from the date of this Opinion and Order.

Defendant Marrazzo must be served with process within 14 days from the filing of any amended

complaint and, if no amended complaint is filed, within 28 days of this Opinion and Order.[3]

     **IT IS SO ORDERED**.

     DATED this 23rd day of June, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

---

[3] In other words, if Plaintiff files an amended complaint, he can wait to serve Marrazzo until after the amended complaint is filed, and Plaintiff will have 14 days to serve Marrazzo with the summons and amended complaint. If Plaintiff chooses not to file an amended complaint, he will have 14 days after that deadline passes to serve Marrazzo with the summons and original complaint.